73723, 73724. GENERAL ELECTRIC CREDIT CORPORATION
v. SMITH (two cases).
(360 SE2d 443)

McMurray, Presiding Judge.

General Electric Credit Corporation (GECC) filed an action against Spurgeon Smith seeking $1,726.06, plus interest, under a promissory note executed by Mr. Smith in favor of Glennville Acceptance Corporation (GAC). Simultaneously, GECC filed a separate action against Harriett Smith seeking $1,856.40, plus interest, under a promissory note executed by Ms. Smith in favor of GAC. GECC based its claims in both actions on the alleged assignments of the above-described notes by GAC to GECC.

Spurgeon Smith answered and admitted that he executed a promissory note in favor of GAC in the amount of $2,184. However, he denied that GAC lawfully assigned the promissory note to GECC and further denied that he was indebted to GECC in the amount of $1,726.06. In a separate answer, Harriett Smith admitted that she executed a promissory note in favor of GAC in the amount of $2,688. However, she denied that GAC lawfully assigned the promissory note to GECC and further denied that she was indebted to GECC in the amount of $1,856.40.

In their answers, the Smiths asserted identical counterclaims, alleging in Count 1 that GECC "together with Royce Sutton, [GAC] and Universal Finance Company conspired to defraud [them] by failing to enter the payments which [they] made on said [notes]." The Smiths further alleged that GECC, "Royce Sutton, [GAC] and Universal Finance Company fraudulently [concealed] the fact that Royce Sutton was not entering the payments on [their accounts] as they represented to [the Smiths] was being done." In support of these allegations, the Smiths alleged that "Royce Sutton d/b/a [GAC] was the agent and representative for [GECC]."

In Count 2, the Smiths alleged that GECC "has been stubbornly litigious, has put [them] to unnecessary trouble and expense and has acted in bad faith." More specifically, the Smiths alleged that they have "repeatedly advised [GECC] and their (sic) attorney and their

(sic) agent for litigation that said indebtedness was paid and that [they] had set off claims far in excess of [these claims], however, [GECC] continued to litigate in a previous action and although [the Smiths] made three pre-trial appearances in said previous suit [GECC's] agents and representatives failed to appear and although said suit was orally dismissed by the court, [GECC's] agents persisted in trial and put [the Smiths] through a trial which resulted in a dismissal against [GECC's] litigating agents for failure to present a valid claim against [the Smiths]."

Both actions were consolidated for a jury trial and the evidence adduced therefrom, construed most favorably to support the jury's verdict, authorized the following pertinent facts: GECC is a "wholly-owned subsidiary" of General Electric Company that specializes "in providing credit lines — or loans to small-loan independent finance companies throughout the [United States]." Beginning in 1976, GECC provided operating capital to GAC, a Georgia corporation which was owned and operated by Royce and Marjorie Sutton and was doing business in Glennville, Georgia as an independent loan company. As collateral for its line of credit from GECC, GAC provided GECC security interests in various assets, including the consumer notes acquired by GAC. Pursuant to a "Loan Agreement" executed by GAC in 1970 and acquired by GECC through assignment in 1976, GECC perfected its security interest in GAC's commercial paper by hypothecation. On March 1, 1977, GECC filed a "Financing Statement," pursuant to OCGA § 11-9-401 et seq., listing the items pledged by GAC as collateral. (Upon notification by GAC of satisfaction of the underlying debt on a consumer note held by GECC, GECC would return the collateral note to GAC for satisfaction.)

On August 3, 1979, Royce and Marjorie Sutton, in their individual capacities, executed a promissory note in favor of Harriett and Spurgeon Smith in the principal amount of $19,000, bearing interest at a rate of 12 percent per annum. When this note became due, the Suttons were unable to satisfy the underlying debt. Harriett and Spurgeon Smith testified that after several demands for payment, the Suttons agreed to loan the Smiths funds from GAC, verbally assuring the Smiths that they would service their loans from GAC in partial satisfaction of the Suttons' personal debt to the Smiths. Relying on this understanding, Harriett Smith executed a promissory note in favor of GAC on March 8, 1982, and received funds from GAC; similarly, Spurgeon Smith executed a promissory note in favor of GAC on August 30, 1982, and received funds from GAC.

Pursuant to its "Loan Agreement" with GECC, GAC endorsed and mailed the original notes executed by the Smiths to GECC. When GECC received the notes no payments were due under the terms of the notes; neither note displayed evidence of forgery; and, neither

note had been dishonored. Further, Edward S. Smith, "an Account Manager with [GECC] in Allentown [, Pennsylvania]," testified that GECC was not aware of any claims or defenses against either note.

Although the Smiths testified that they made no payments under the notes, other undisputed evidence showed that GAC received payments on Harriett Smith's account until April 5, 1983, at which time there remained a balance of $1,784. Further, the undisputed evidence showed that GAC received payments on Spurgeon Smith's account until April 11, 1983, at which time there remained a balance of $1,768. No other payments were received by GAC on behalf of the Smiths and no other sums were credited to the Smiths' accounts. (Although the Smiths did not dispute the balances remaining on their accounts, both Harriett and Spurgeon Smith testified that they were not responsible for the unpaid balances because the Suttons were to "take care" of their debts under the notes.)

During May 1983 GECC terminated GAC's line of credit and foreclosed on its security, seizing all customer ledger cards maintained by GAC and assuming authority over GAC's commercial paper, including the notes executed by the Smiths. Thereafter, GECC entered into an agreement with Universal Finance Company of Claxton (Universal) to service and collect the accounts acquired by GECC by foreclosure. Universal immediately notified Harriett and Spurgeon Smith that their accounts had been assigned to Universal and requested the Smiths to verify the remaining balances on their accounts. In response, the Smiths communicated with agents of Universal and GECC and denied liability under the notes explaining that Royce Sutton was to "take care" of the notes.

On January 10, 1984, Universal filed separate actions against the Smiths in the Magistrates Court of Tattnall County, Georgia to recover under the notes. (GECC was not a party to these lawsuits.) On March 13, 1984, Universal obtained judgments against the Smiths for the full amount due under the notes as was indicated on the ledger cards formerly maintained by GAC. On appeal to the Superior Court of Tattnall County, Georgia, the Superior Court directed a verdict for each of the Smiths in Universal's actions against the Smiths as a proper showing had been made that there was never a proper assignment of the Smith notes to Universal.

At the conclusion of the evidence, GECC's motion for directed verdict was denied. The cases were then submitted to the jury for consideration and identical verdicts were rendered in favor of Harriett and Spurgeon Smith on their counterclaims. On each counterclaim, the jury awarded actual damages, punitive damages and attorney fees. GECC's motion for judgment notwithstanding the verdict and, in the alternative, motion for new trial, was denied. GECC appeals from the judgment entered in favor of Harriett Smith in Case

No. 73723. GECC appeals from the judgment entered in favor of Spurgeon Smith in Case No. 73724. We now consider both appeals. *Held*:

1. GECC first contends the trial court erred in failing to grant its motion for directed verdict and its motion for judgment notwithstanding the verdict because "GECC was a holder-in-due course of the Smith notes and, therefore, took the instruments free from all defenses of any party to the instruments with whom GECC had not dealt."

"The relevant statute with reference to the [Smiths'] promissory [notes], Code Ann. § 109A-3-302 (1) [now OCGA § 11-3-302 (1)], provides: 'A holder in due course is a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against it or claim to it on the part of any person.' See generally *Johnson v. C & S Bank*, 144 Ga. App. 515 (241 SE2d 625) (1978)." *Design Engineering &c. Inc. v. Cessna Fin. Corp.*, 164 Ga. App. 159, 160 (1) (296 SE2d 195). With the exception of five defenses enumerated in OCGA § 11-3-305 (2), "a holder in due course . . . takes the instrument free from . . . [a]ll claims to it on the part of any person; and . . . [a]ll defenses of any party to the instrument with whom the holder has not dealt. . . ." OCGA § 11-3-305.

It is uncontroverted in the cases sub judice that when GECC perfected its security interests in the notes executed by the Smiths, GECC took the notes in good faith and for value, and without any notice of any claims or defenses asserted by the Smiths. Further, there was no evidence indicating that GECC was aware of any defenses against the notes executed by the Smiths until after the foreclosure by GECC and after Universal began verifying amounts remaining on GAC's former accounts. However, the Smiths argue that GECC was placed on notice of the alleged fraud underlying the execution of the promissory notes because the Suttons were "agents" acting on behalf of GECC. Under the circumstances of the cases sub judice, this assertion is similar to the defense associated with the so-called "party-to-the-transaction rule."

"The 'party-to-the-transaction rule' is a legal principle in the law of negotiable instruments and has been adopted in several jurisdictions. That legal principle establishes, in effect, a defense to the assertion of holder in due course status. As stated by the Supreme Court of New Jersey, the premise upon which the 'rule' is based is that '(i)n the field of negotiable instruments, good faith is a broad concept. The basic philosophy of the holder in due course status is to encourage free negotiability of commercial paper by removing certain anxieties of one who takes the paper as an innocent purchaser knowing no reason why the paper is not as sound as its face would indicate. It would

seem to follow, therefore, that the more the holder knows about the underlying transaction, and particularly the more he controls or participates or becomes involved in it, the less he fits the role of a good faith purchaser for value; the closer his relationship to the underlying agreement which is the source of the note, the less need there is for giving him the tension-free rights considered necessary in a fast-moving, credit-extending commercial world.' *Unico v. Owen*, 232 A2d 405, 410 (N. J. 1967)." *Design Engineering &c. Inc. v. Cessna Fin. Corp.*, 164 Ga. App. 159 (1), 161, supra.

Before the "party-to-the-transaction rule" may be asserted as a defense against a holder in due course, there must be evidence showing that the assignee was an "original party" to the underlying transaction or that the assignee exercized sufficient "control" of the underlying transaction to authorize a finding that the assignee was, in reality, a party to the original transaction. See *Design Engineering &c. Inc. v. Cessna Fin. Corp.*, 164 Ga. App. 159, 160 (1), supra.

The evidence presented at trial in the cases sub judice did not support a finding that GECC was an "original party" to the notes executed by the Smiths in favor of GAC. The evidence supporting this conclusion showed that GAC was a small finance company which had independently conducted business in Glennville, Georgia for over 20 years. (GECC did not begin providing credit to GAC until 1976.) GECC had no ownership interest in GAC and GECC did not prescribe the manner in which GAC conducted its business. Further, there was no evidence indicating the GECC was GAC's only capital supporter. Most persuasively, however, there was no evidence showing that GECC participated in or controlled the manner in which GAC's consumer loan customers were approved for credit. This determination was apparently left to the sole discretion of GAC's officers and employees, Royce and Marjorie Sutton. The fact that GECC prescribed the manner in which GAC was to prepare, execute and maintain its commercial paper does not indicate that GECC was an "original party" to the Smiths' loan transaction. Realistically, this evidence reveals only that GECC was a secured creditor seeking to protect its collateral. Accordingly, the Suttons were not "agents" of GECC, nor was GECC an "original party" to the Smiths' loan transactions. GECC was, therefore, a holder in due course as contemplated by OCGA § 11-3-302.

"The standard for granting a directed verdict or a judgment notwithstanding the verdict are the same. Where there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed. OCGA § 9-11-50 (Code Ann. § 81A-150). In reviewing grant of a directed verdict or a judgment notwithstanding the verdict, we must decide whether all the evidence de-

manded it, or whether there was some evidence supporting the verdict of the jury. *Bryant v. Colvin*, 160 Ga. App. 442 (287 SE2d 238) (1981). A judgment notwithstanding the verdict is improperly granted in the face of conflicting evidence, and an appellate court must view the evidence in the light most favorable to the party who secured the jury verdict. Id." *Pendley v. Pendley*, 251 Ga. 30 (1), 31 (302 SE2d 554).

In the cases sub judice, since GECC was a holder in due course and since the Smiths did not assert any one of the five statutory defenses enumerated in OCGA § 11-3-305 (2), the trial court erred in failing to grant GECC's motion for directed verdict and GECC's motion for judgment notwithstanding the verdict with regard to the Smiths' liability under the promissory notes. OCGA § 11-3-305. With regard to the impotence of the defense of "fraud by inducement," as asserted by the Smiths, against a holder in due course, see *Moore v. Southern Discount Co.*, 107 Ga. App. 868 (3), 869 (132 SE2d 101). The undisputed evidence authorized a verdict in favor of GECC against Harriet Smith for $1,784 and a verdict against Spurgeon Smith for $1,768.

2. Next, GECC contends the trial court erred in failing to grant its motion for directed verdict and motion for judgment notwithstanding the verdict with regard to the Smiths' counterclaims.

(a) There was no evidence presented at trial showing that GECC "conspired to defraud" the Smiths by "failing to enter payments" on the Smiths' accounts. Neither was there evidence showing that Universal, acting on behalf of GECC, "conspired to defraud" the Smiths. Further, as we held in Division 1 of this opinion, there was insufficient evidence to authorize a finding that GAC or Royce and Marjorie Sutton were agents acting on behalf of GECC. Consequently, the trial court erred in failing to direct a verdict in favor of GECC on Count 1 of the Smiths' counterclaims. See also OCGA § 11-9-317.

(b) Since the trial court erred in failing to enter a verdict in favor of GECC on its claims under the promissory notes, the Smiths' action for abusive litigation in Count 2 of their respective counterclaims must fail. See *Smith v. Pierce*, 179 Ga. App. 724, 725 (4) (347 SE2d 692). The trial court erred in failing to direct a verdict in favor of GECC in this regard.

3. In light of our holdings in Divisions 1 and 2 of this opinion, it is unnecessary to address GECC's remaining enumerations of error.

*Judgments reversed. Sognier and Beasley, JJ., concur.*

DECIDED JULY 15, 1987 —
REHEARING DENIED JULY 31, 1987 — ▬▬▬▬▬

*Thomas J. Gallo, B. Daniel Dubberly III*, for appellant.

*Richard D. Phillips*, for appellee.